**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| LESTER E. COX MEDICAL CENTERS d/b/a COX MEDICAL CENTERS; KENNETT HMA, LLC f/k/a TWIN RIVERS REGIONAL MEDICAL CENTER; KIRKSVILLE MISSOURI HOSPITAL COMPANY, LLC d/b/a NORTHEAST REGIONAL MEDICAL CENTER; MOBERLY HOSPITAL COMPANY, LLC d/b/a MOBERLY REGIONAL MEDICAL CENTER; POPLAR BLUFF REGIONAL MEDICAL CENTER, LLC d/b/a POPLAR BLUFF REGIONAL MEDICAL CENTER - NORTH AND POPLAR BLUFF REGIONAL MEDICAL CENTER – SOUTH; COX BARTON COUNTY HOSPITAL; COX-MONETT HOSPITAL, INC. d/b/a COX MONETT HOSPITAL; THE SKAGGS COMMUNITY HOSPITAL ASSOCIATION d/b/a COX MEDICAL CENTER BRANSON; FREEMAN HEALTH SYSTEM d/b/a FREEMAN HOSPITAL EAST, FREEMAN HOSPITAL WEST, and FREEMAN NEOSHO HOSPITAL; CITIZENS MEMORIAL HOSPITAL DISTRICT d/b/a CITIZENS MEMORIAL HOSPITAL; TRUMAN MEDICAL CENTER, INC. d/b/a UNIVERSITY HEALTH TRUMAN MEDICAL CENTER; TRUMAN MEDICAL CENTER, INC. d/b/a UNIVERSITY HEALTH LAKEWOOD MEDICAL CENTER; CH ALLIED SERVICES, INC. d/b/a BOONE HOSPITAL CENTER; HEARTLAND REGIONAL MEDICAL CENTER d/b/a MOSAIC LIFE CARE, HEARTLAND LONG TERM ACUTE CARE HOSPITAL d/b/a LONG TERM ACUTE CARE HOSPITAL MOSAIC LIFE CARE ST. JOSEPH; NORTHWEST MEDICAL CENTER ASSOCIATION d/b/a MOSAIC MEDICAL CENTER – ALBANY; and MOSAIC MEDICAL CENTER – MARYVILLE f/k/a SSM HEALTH ST. FRANCIS HOSPITAL-MARYVILLE<br><br>Plaintiffs,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS, LLC; AMNEAL PHARMACEUTICALS, INC.; AMNEAL PHARMACEUTICALS OF NEW YORK LLC; | Case No. 6:22-cv-3192<br><br>(Removal from: Circuit Court of Greene County, 2031-CC00459)<br><br>JURY TRIAL DEMANDED |

IMPAX LABORATORIES, LLC; TEVA PHARMACEUTICAL INDUSTRIES, LTD.; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; WATSON LABORATORIES, INC.; WARNER CHILCOTT COMPANY, LLC; ACTAVIS PHARMA, INC. f/k/a WATSON PHARMA INC.; ACTAVIS SOUTH ATLANTIC LLC; ACTAVIS ELIZABETH LLC; ACTAVIS MID ATLANTIC LLC; ACTAVIS TOTOWA LLC; ACTAVIS LLC; ACTAVIS KADIAN LLC; ACTAVIS LABORATORIES UT, INC.; ACTAVIS LABORATORIES FL, INC.; JOHNSON & JOHNSON; ABBVIE, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN PHARMACEUTICALS, INC., JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN PHARMACEUTICALS, INC.; NORAMCO, INC.; TASMANIAN ALKALOIDS PTY. LTD.; ASSERTIO THERAPEUTICS, INC.; ENDO HEALTH SOLUTIONS, INC.; ENDO PHARMACEUTICALS, INC.; PAR PHARMACEUTICAL, INC.; PAR PHARMACEUTICALS COMPANIES, INC. ALLERGAN FINANCE, LLC; ALLERGAN SALES, LLC; ALLERGAN USA, INC.; ANDA, INC.; H.D. SMITH, LLC f/k/a H.D. SMITH WHOLESALE DRUG CO.; KVK-TECH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; CARDINAL HEALTH, INC.; THE KROGER CO.; KROGER LIMITED PARTNERSHIP I; KROGER LIMITED PARTNERSHIP II; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; INTERLOCK PHARMACY SYSTEMS, LLC; OMNICARE PHARMACY OF THE MIDWEST, LLC d/b/a OMNICARE OF KANSAS CITY; WALGREENS BOOTS ALLIANCE, INC.; WALGREEN CO., WALGREEN EASTERN CO., INC., WALMART, INC.; WAL-MART STORES EAST, LP; and MCKESSON CORP.

Defendants.

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1442 and 1446, Defendant McKesson Corporation ("McKesson") hereby removes the above-captioned action from the Circuit Court of Greene County, Missouri, to the United States District Court for the Western District of Missouri, Southern Division.

This case is removable under § 1442 because Plaintiffs' allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to federal healthcare facilities throughout Missouri under the requirements of a federal contract and at the direction of a federal officer. Although Plaintiffs purport to disavow claims based on opioids distributed by McKesson under that federal contract, Plaintiffs seek to recover for a public nuisance allegedly caused by the total—and purportedly excessive—volume of opioids that McKesson distributed to the counties served by Plaintiffs over the relevant period. Because Plaintiffs' allegations and claims for relief inherently implicate and necessarily challenge distributions that McKesson made under the federal contract, Plaintiffs' purported disavowal does not defeat McKesson's right to a federal forum in which to litigate its federal defenses.

Thus, as grounds for removal, McKesson states as follows:

### I. NATURE OF THE REMOVED ACTION

1. On April 14, 2020, Plaintiffs[1] filed *Lester Cox Medical Center et al. v. Amneal Pharmaceuticals, LLC et al.* in the Circuit Court of Greene County, Missouri. The case was assigned Case No. 2031-CC00459.

---

[1] Plaintiffs are Lester E. Cox Medical Centers d/b/a Cox Medical Centers; Kennett HMA, LLC f/k/a Twin Rivers Regional Medical Center; Kirksville Missouri Hospital Company, LLC d/b/a Northeast Regional Medical Center; Moberly Hospital Company, LLC d/b/a Moberly Regional Medical Center; Poplar Bluff Regional Medical Center, LLC d/b/a Poplar Bluff Regional Medical Center – North and Poplar Bluff Regional Medical Center – South; Cox Barton County Hospital; Cox-Monett Hospital, Inc. d/b/a Cox Monett Hospital; The Skaggs Community Hospital Association d/b/a Cox Medical Center Branson; Freeman Health System d/b/a Freeman Hospital East, Freeman Hospital West, and Freeman Neosho Hospital; Citizens Memorial Hospital District

2. On July 1, 2022, Plaintiffs filed the First Amended Petition ("1st Am. Pet."). The First Amended Petition, among other things, added McKesson as a defendant.

3. On July 15, 2022, McKesson was served with the First Amended Petition.

4. The First Amended Petition alleges, among other things, that McKesson failed to report and/or halt shipment of suspicious orders for prescription opioid medications, failed to prevent diversion of prescription opioids, and distributed prescription opioids in excess of legitimate medical needs, thereby harming residents of the communities served by Plaintiffs. *See* 1st Am. Pet. ¶ 29 (alleging that distributors "flooded affected areas with opioids"); *id.* ¶ 37 (alleging that defendants' "fail[ure] to report suspicious orders of opioids has enabled an oversupply of opioids to communities, including in the regions that Plaintiffs serve"); *id.* ¶ 73 ("Defendants have contributed substantially to the opioid crisis by selling and distributing far greater quantities of opioids than they know should be necessary for legitimate medical uses, while failing to report, and take steps to halt, suspicious orders when they were identified, thereby exacerbating the oversupply of such drugs and fueling an illegal secondary market.").

5. Although Plaintiffs purport to disavow claims relating to McKesson's distribution of prescription opioids under any federal contract, *id.* ¶¶ 229-30, the factual allegations in the First Amended Petition inherently put at issue *all* of McKesson's distributions of prescription opioids into the areas served by Plaintiffs. These distributions necessarily include McKesson's distribution of pharmaceuticals to the U.S. Department of Veterans Affairs, U.S. Bureau of Prisons, and other federal customers in Missouri pursuant to an exclusive federal contract called the Pharmaceutical

---

d/b/a Citizens Memorial Hospital; Truman Medical Center, Inc. d/b/a University Health Truman Medical Center; Truman Medical Center, Inc. d/b/a University Health Lakewood Medical Center; CH Allied Services, Inc. d/b/a Boone Hospital Center; Heartland Regional Medical Center d/b/a Mosaic Life Care, Heartland Long Term Acute Care Hospital d/b/a Long Term Acute Care Hospital Mosaic Life Care St. Joseph; Northwest Medical Center Association d/b/a Mosaic Medical Center – Albany; and Mosaic Medical Center – Maryville f/k/a SSM Health St. Francis Hospital- Maryville (collectively, "Plaintiffs").

Prime Vendor Contract ("PPV Contract").[2] Plaintiffs' own allegations as to the allegedly excessive amounts of opioids distributed by McKesson *include* prescription opioids McKesson distributed under that PPV Contract. For example, Plaintiffs allege that "Distributors Cardinal Health, McKesson Corp. and AmerisourceBergen funneled the equivalent of about 260 opioid pills for every person in Missouri in a six-year period (2012 – 2018), during which time the opioid epidemic raged in Missouri." 1st Am. Pet. ¶ 985. Thus, Plaintiffs' own allegations include distributions McKesson made to federal customers under a federal contract and at the direction of a federal officer. *See id.* ¶ 756 ("The conclusion that Defendants were on notice of the problems of abuse and diversion follows inescapably from the fact that they flooded communities with opioids in quantities that they knew or should have known exceeded any legitimate market for opioids-even the wider market for chronic pain.").

6. Perhaps most fundamentally, Plaintiffs' claim that a public nuisance has been created by distribution of allegedly excessive amounts of prescription opioids, *see id*. ¶¶ 29, 37, 73, 756, is a theory that cannot be divided or separated between opioids distributed under the PPV Contract as compared to opioids shipped to private pharmacies.

7. For the foregoing reasons, and as set forth more fully below, Plaintiffs' allegations against McKesson relate to and necessarily implicate McKesson's distribution of pharmaceuticals to federal customers under a federal contract and under the direction of a federal officer. McKesson is without discretion to depart from the strictures of that federal contract. This action is therefore removable under the federal officer removal statute, 28 U.S.C. § 1442.

---

[2] PPV Contract, *available at* https://www.va.gov/opal/docs/nac/ncs/ppvContract36W79720D0001.pdf.

## II. THIS CASE IS REMOVABLE UNDER THE FEDERAL OFFICER REMOVAL STATUTE.

8. The federal officer removal statute authorizes "any person acting under" a federal officer to remove to federal court a civil action "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

9. The federal officer removal statute has long been "liberally construed" to favor removal and to protect defendants' rights to a federal forum when acting under federal officers' authority. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). The Supreme Court has held that "the right of removal is *absolute* for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (emphasis added) (citation and quotation omitted). Indeed, there has been "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, [federal courts] are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp*., 445 F.3d 1247, 1252 (9th Cir. 2006).

10. In 2011, Congress amended the statute to permit removal of any state suit "for *or relating to* any act under color of . . . [federal] office." 28 U.S.C. § 1442(a)(1) (emphasis added). In adding the phrase "relating to," Congress further broadened the scope of acts giving rise to removal under the statute. *See* H.R. Rep. 112-17(I) at 6 (2011), reprinted in 2011 U.S.C.C.A.N. 420, 425 (explaining that amendment "is intended to broaden the universe of acts that enable Federal officers to remove to Federal court"); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) ("The ordinary meaning of ['relating to'] is a broad one [meaning] 'to stand in some relation; to have [some] bearing or concern; to pertain; refer; to bring into association with.'" (citation omitted)).

11. Federal officer removal requires a defendant to show that it "(1) . . . has acted under the direction of a federal officer; (2) there was a causal connection between its actions and the official authority; and (3) it has a colorable federal defense to the plaintiff's claims." *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021).

12. Each requirement is satisfied here.

**A. This Action Is One of Thousands of Opioid Actions, and One of Dozens That Implicate McKesson's Distributions at the Direction of a Federal Officer.**

13. This action is one of thousands of related lawsuits asserting claims arising out of the sale, marketing, and distribution of prescription opioids nationwide.

14. More than 3,000 of these actions are pending before Judge Dan Aaron Polster in the federal multidistrict litigation ("MDL"). *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).[3]

15. McKesson has removed nearly 30 opioid cases from state to federal court on the basis that the complaints necessarily put at issue distributions under the PPV Contract.[4] These

[3] *See also* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report – Distribution of Pending MDL Dockets by Actions Pending* (May 16, 2022), https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Actions_Pending-May-16-2022.pdf

[4] These nearly 30 removed cases include *Lac Courte Oreilles Band Of Lake Superior Chippewa Indians v. McKesson Corp. et al.*, No. 3:18-cv-00286 (W.D. Wisc.); *Red Cliff Band of Lake Superior Chippewa Indians v. McKesson Corp. et al.*, No. 3:18-cv-00380 (W.D. Wisc.); *Fond du Lac Band of Lake Superior Chippewa v. McKesson Corp. et al.*, No. 0:18-cv-02713 (D. Minn.); *Robinson Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02525 (N.D. Cal.); *Hopland Band of Pomo Indians, v. McKesson Corp. et al.*, No. 3:18-cv-02528 (N.D. Cal.); *Scotts Valley Band of Pomo Indians v. McKesson Corp. et al.*, No. 3:18-cv-02529 (N.D. Cal.); *Round Valley Indian Tribes v. McKesson Corp. et al.*, No. 3:18-cv-02530 (N.D. Cal.); *Redwood Valley Or Little River Band Of Pomo Indians of the Redwood Valley Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02531 (N.D. Cal.); *Guidiville Rancheria of California v. McKesson Corp. et al.*, No. 3:18-cv-02532 (N.D. Cal.); *Coyote Valley Band of Pomo Indians v. McKesson Corp. et al.*, No. 3:18-cv-02533 (N.D. Cal.); *Consolidated Tribal Health Project Inc. v. McKesson Corp. et al.*, 3:18-cv-02534 (N.D. Cal.); *Center Point, Inc. v. McKesson Corp. et al.*, No. 3:18-cv-02535 (N.D. Cal.); *Big Valley Band of Pomo Indians of the Big Valley Rancheria v. McKesson Corp. et al.*, No. 3:18-cv-02536-VC (N.D. Cal.); *Big Sandy Rancheria of Western Mono Indians v. McKesson Corp. et*

cases include those brought by states, counties, cities, private hospitals, and Native American tribes.

16. On September 4, 2018, Judge Polster issued the first opinion on the merits of McKesson's federal officer removal grounds, in a pair of cases brought by Native American tribes alleging claims comparable to those at issue here. *In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018).[5] In his opinion, Judge Polster agreed with McKesson that cases in which plaintiffs' allegations implicate McKesson's PPV distributions belong in federal court under 28 U.S.C. § 1442(a)(1), and denied the tribes' motions to remand.

17. For the same reasons, federal jurisdiction is appropriate here.

**B. McKesson Acted Under Color of Federal Office.**

18. The federal officer removal statute applies to private parties "'who lawfully assist' [a] federal officer 'in the performance of his official duty.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151 (2007) (citing *Davis v. South Carolina*, 107 U.S. 597, 600 (1883)). It is well-established that government contractors involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior" are "acting under" a federal officer. *Id.* at 152 (emphasis and quotations omitted).

---

*al.*, No. 3:18-cv-02537 (N.D. Cal.); *Tucson Medical Center v. Purdue Pharma L.P. et al.*, No. 4:18-cv-00481 (D. Ariz.); *City of Tucson v. Purdue Pharma L.P. et al.*, No. 4:19-cv-00167 (D. Ariz.); *Pima County v. Purdue Pharma L.P. et al*, No. 4:19-cv-00166 (D. Ariz.); *City of Prescott v. Allergan PLC et al.*, No. 3:19-cv-08165 (D. Ariz.); *City of Portsmouth v. Purdue Pharma et al.*, No. 2:19-cv-00331 (E.D. Va.); *Cty. of Angelina v. Purdue Pharma L.P.*, *et al.*, No. 4:19-cv-03590 (S.D. Tex.); *City of Orlando v. CVS Health Corp. et al.*, No. 6:20-cv-00736 (M.D. Fla.).

[5] Although on September 14, 2020, a federal district court in the Eastern District of Oklahoma granted the State of Oklahoma's motion to remand an opioid-related action that McKesson removed on federal officer grounds, McKesson promptly appealed that decision to the Tenth Circuit under 28 U.S.C. § 1447(d), which provides that a case "removed pursuant to section 1442 . . . *shall* be reviewable by appeal[.]" (emphasis added). The appeal has been briefed and argued and remains pending. *See State of Oklahoma, ex rel. John M. O'Connor v. McKesson Corp.*, No. 20-7059 (10th Cir.).

19. Because Plaintiffs bring a public nuisance claim that cannot be divided between opioids distributed under the PPV Contract and other opioids distributed by McKesson, and seek recovery for harm allegedly caused by the overall quantities of all prescription opioids distributed to the areas served by Plaintiffs, *see* 1st Am. Pet. ¶¶ 4, 29, 37, 73, 756, 985, their claims necessarily implicate prescription opioids that McKesson supplied to federal facilities pursuant to its responsibilities as a government contractor.

20. In particular, McKesson, through an exclusive contract with the United States government, is the primary distributor of prescription medications to Veterans Affairs, Bureau of Prisons, and other federal facilities. It has supplied and continues to supply prescription medications, including prescription opioids, to such federal facilities in Missouri.

21. Pursuant to the PPV Contract, McKesson must supply prescription medications to those facilities upon the federal government's request.

22. In the counties where Plaintiffs are located, distributions to federal customers under the PPV Contract represent over 17 percent of McKesson's overall shipments of prescription opioids.

23. The PPV Contract is governed by federal law and regulation and is overseen by a federal contracting officer. Under the PPV Contract, McKesson *must* process and fill all orders that it receives from authorized government purchasers. PPV Contract § I-9(b).[6] The PPV Contract requires prompt, typically next-day, delivery of all orders. *Id*. I-9(l). And the PPV Contract does *not* grant McKesson discretion to deny any federal orders placed under the contract. *Id*. § AS3023 (Sept. 2010) (McKesson "may not unreasonably delay filling an FSS [Federal Supply Schedule] order"). Instead, McKesson must coordinate shipment decisions through the

[6] All references to the PPV Contract are to the version of the PPV Contract that was in effect from August 10, 2012 through August 9, 2020. The version of the PPV Contract that took effect on August 10, 2020 contains substantially identical provisions.

federal contracting officer assigned to administer the contract, who retains close day-to-day supervision over McKesson's fulfillment of federal orders.

24. As the VA has recognized, McKesson's performance of the PPV Contract is "a critical link in the supply chain among drug manufacturers, VA hospitals, and Veterans who need treatment" and "remains the most cost-effective solution to providing timely, cost-efficient, high quality health care products across the country." Examining VA's Pharmaceutical Prime Vendor Contract Before the House Comm. on Veterans' Affairs, 112th Cong. 40 (2012) (Statement of Hon. W. Scott Gould). "[A]bsent McKesson's distributions pursuant to the PPV Contract, the VA would have to warehouse and distribute drugs itself, a job it formerly did but abandoned in favor of the PPV Program." *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1076.

25. Thus, McKesson's performance of the PPV Contract "goes well beyond simple compliance with the law" and helps with "the basic governmental task of providing health benefits" to veterans, prisoners, and other populations served by federal healthcare facilities in Missouri. *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1234 (8th Cir. 2012), *abrogated on other grounds by Buljic v. Tyson Foods*, Inc., 22 F.4th 730 (8th Cir. 2021); *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1076.

26. Furthermore, "McKesson inarguably has a contractual relationship with the government and has retained little, if any, freedom to decide whether to fill orders pursuant to the PPV Contract." *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1074.

27. Accordingly, McKesson acted under the direction of a federal officer in distributing prescription opioids to federal healthcare facilities in the Missouri counties served by Plaintiffs. *See Jacks*, 701 F.3d at 1233 (health insurer that contracted with OPM to administer health benefits plan and pursue subrogation claims was acting under federal officer).

### C. The Causal Connection Requirement Is Satisfied.

28. To establish a "causal connection" between Plaintiffs' claims and McKesson's federally required conduct, McKesson need only show "a connection or association" between the claims and the conduct. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (quotation marks omitted); *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) ("By the Removal Clarification Act, Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected or associated*, with acts under color of federal office.").

29. There is a causal connection between Plaintiffs' claims and McKesson's acts under the federal PPV Contract. Indeed, Plaintiffs' claims put at issue *all* prescription opioids McKesson distributed into and within the counties served by Plaintiffs. Notably, Plaintiffs allege that the Defendants "have contributed substantially to the opioid crisis by selling and distributing far greater quantities of opioids than they know should be necessary for legitimate medical uses . . . thereby exacerbating the oversupply of such drugs and fueling an illegal secondary market." 1st Am. Pet. ¶ 73; *see also id*. ¶ 1046 ("Because of the well-established relationship between the use of prescription opioids and the use of non-prescription opioids, like heroin, the massive distribution of opioids by Defendants has caused the opioid epidemic to include heroin addiction, abuse, and death."); *id*. ¶¶ 1162-63 ("At all times, all Defendants possessed the right and ability to control the nuisance causing the flood of opioids in Missouri . . . As a direct and proximate result of the nuisance, Plaintiffs have sustained operational and financial harm, including by spending a substantial amount of money trying to treat, neutralize and remedy the harms caused by Defendants' nuisance-causing activity[.]"). Further, Plaintiffs assert a public nuisance claim that is indivisible between opioids distributed under the PPV Contract and other opioids distributed by McKesson in Missouri. Those distributions necessarily include prescription opioids McKesson

supplied to Veterans Affairs, Bureau of Prisons, and other federal facilities, the delivery of which was controlled by the PPV Contract, and overseen by a federal officer.

30. Because Plaintiffs' claims "put *all* prescription opioids at issue and allege that diversion can occur at *any* point in the supply chain, including those opioids supplied pursuant to the PPV contract[,]" the causal connection requirement is satisfied. *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1077; *see also Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 257 (4th Cir. 2021) ("[W]hether or not it mentions the [DOD contract], Arlington's claim that the [pharmacy benefit manager defendants] 'did nothing to stem the flow of excess opioids into Arlington County' necessarily includes activity that is directly connected to the DOD contract, as the [PBM defendants] were required to act in conformity with that contract.").

**D. McKesson Has Colorable Federal Defenses.**

31. In construing the colorable federal defense requirement, the Supreme Court has "rejected a 'narrow, grudging interpretation' of the statute" and "do[es] not require the officer virtually to 'win his case before he can have it removed.'" *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

32. McKesson has a colorable federal defense to Plaintiffs' claims under the government contractor defense, which "protects government contractors from tort liability that arises as a result of the contractor's compli[ance] with the specifications of a federal government contract." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (citation and quotation omitted); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). In denying remand in the *Cherokee Nation* case, Judge Polster ruled that "McKesson's distributions to the federal government pursuant to the PPV Contract are sufficient to demonstrate that the government contractor defense is plausible," and therefore this defense is "sufficient to meet the third prong of the federal officer

removal analysis." *Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d at 1078. Finding Judge Polster's analysis to be "persuasive[,]" the Fourth Circuit likewise held that pharmacy benefit managers sued for allegedly oversupplying opioids into Arlington County raised a colorable government contractor defense based on their distribution of opioids under a DOD contract similar to McKesson's PPV Contract with the VA. *Express Scripts Pharmacy*, 996 F.3d at 255.

33. McKesson also has a colorable federal preemption defense because Plaintiffs' claims conflict with the federal Controlled Substances Act and its implementing regulations. For example, Plaintiffs' claims based on the Missouri Comprehensive Drug Control Act, Mo. Rev. Statutes §§ 195.005, *et seq*., are preempted because imposing liability on the basis of those state law claims would frustrate the purpose of Congress in enacting the federal Controlled Substances Act. Congress authorized the Drug Enforcement Administration to regulate registrants and vested that federal agency with specific enforcement tools, and that framework would be frustrated by imposition of inconsistent state law liability. Furthermore, Plaintiffs' claims are preempted because imposing liability on the basis of those state law claims would stand as an obstacle to effective operation of the federal Controlled Substances Act and implementing regulations, including when distributors could not comply with both state and federal law. *See* 21 U.S.C. § 903 (preempting state laws where there is a "positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together."); *see also Express Scripts Pharmacy*, 996 F.3d at 256 (defendants raised colorable preemption defense in arguing that county's state law claims based on the alleged oversupply of prescription opioids conflicted with the requirements of the DOD's contract and the TRICARE statute).

## III. PLAINTIFFS' DISCLAIMER IS INEFFECTIVE TO DEFEAT FEDERAL OFFICER REMOVAL.

34. As the Supreme Court explained, "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-

question element is met if the *defense* depends on federal law." *Acker*, 527 U.S. at 431 (emphasis added). "Therefore, in the context of federal officer removal, Plaintiff can allege an entirely state-law cause of action, but will not be able to retain the case in state courts if the claim gives rise to a colorable federal defense." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 770 F. Supp. 2d 736, 742 (E.D. Pa. 2011).

35. Applying this principle, courts have found that "the fact that Plaintiffs' complaint expressly disavows any federal claims is not determinative" as to whether federal officer jurisdiction lies over a suit. *Ballenger v. Agco Corp.*, 2007 WL 1813821, at *2 (N.D. Cal. June 22, 2007); *Oberstar v. CBS Corp.*, 2008 WL 11338471, at *3 (C.D. Cal. Feb. 11, 2008) (same).

36. Here, Plaintiffs' purported disclaimer is inconsistent with both the allegations pled and relief sought in the Petition and therefore does not divest this Court of federal officer jurisdiction.

37. First, despite Plaintiffs' purported waiver, the First Amended Petition explicitly puts at issue the aggregate volume of opioids that McKesson distributed into the Missouri counties served by Plaintiffs. *See* 1st Am. Pet. ¶¶ 58, 985, 1163-64. This volume necessarily encompasses and implicates distributions that McKesson made under the PPV Contract. Indeed, the ARCOS numbers on which Plaintiffs rely in arguing that opioid volumes in Missouri contributed to the "opioid epidemic" *include* McKesson's PPV distributions. *Id.* ¶ 985 (citing number of pills distributors shipped to Missouri from 2012-18). Because Plaintiffs' disclaimer is facially inconsistent with the First Amended Petition's allegations of harms purportedly caused by McKesson's federally-directed distributions, it is ineffective to defeat federal officer removal. *See Despres v. Ampco-Pittsburgh Corp.*, 577 F. Supp. 2d 604, 608 (D. Conn. 2008) ("Plaintiffs cannot have it both ways. On the one hand, they seek to hold [defendant] liable for the asbestos exposure

traceable to [a predecessor's] work for the Navy; on the other, they claim [defendant] has no right to remove on the basis of a colorable federal defense.").

38. Second, Plaintiffs' public nuisance claim is based on an alleged cumulative oversupply of prescription opioids by McKesson in the communities served by Plaintiffs, which necessarily includes opioids distributed under the PPV Contract. Plaintiffs' allegations put at issue the entirety of McKesson's distribution of prescription opioids, because Plaintiffs contend that the alleged public nuisance and harms were caused by the total amount of opioids distributed by McKesson (including distributions under the PPV contract). Moreover, Plaintiffs' nuisance theory is predicated on the assertion that the pills McKesson shipped were diverted to illicit use sometime after they were delivered to DEA-registered hospitals and pharmacies, and that the illicit use of those pills caused Plaintiffs to incur uncompensated "costs associated with treating opioid use disordered patients." Pet. ¶ 8; *see id.* ¶ 21 ("An inflated volume of opioids invariably leads to increased diversion and abuse."). Plaintiffs, however, do not purport to distinguish between (i) opioid-disordered patients who used pills diverted after being delivered by McKesson to a federal facility and (ii) opioid-disordered patients who used pills diverted after being delivered by McKesson to private hospital or pharmacy—nor could they.

39. Third, the relief sought in the First Amended Petition is fundamentally inconsistent with Plaintiffs' asserted disclaimer. As part of its public nuisance claim, Plaintiffs allege that "Defendants' conduct . . . consisting of thousands of purposeful and intentional acts directed at vastly expanding the use of opioids, created a nuisance." 1st Am. Pet. ¶ 1154. As such, Plaintiffs seek to recover expenses they allegedly incurred in providing medical treatment to patients with opioid-related conditions, including persons who overdosed on opioids, infants born with neonatal abstinence syndrome, and individuals who contracted diseases from intravenous drug use, among others. *Id.* ¶¶ 59-60. But the First Amended Petition does not — and could not — sever the costs

of treating injuries allegedly caused by opioids traceable to federal facilities that received McKesson's PPV distributions from the costs of treating injuries that resulted from opioids dispensed by McKesson's non-federal customers. To the contrary, Plaintiffs contend that they are obligated to treat *all* opioid-dependent patients in need of urgent care, *id*. ¶¶ 41-45, without regard for how—or where—those patients were injured. Indeed, the opioid-related harms giving rise to Plaintiffs' public nuisance claim has allegedly "devastated communities *across this State*, including the communities served by Plaintiffs." *Id*. ¶ 58 (emphasis added); *see also id*. ¶ 29 (alleging that distributors "uncritically suppl[ied] whatever quantities of opioids pharmacies ordered . . . and caused widespread proliferation and availability of these dangerous drugs throughout communities in Missouri").

40. Given the sweeping nature of the injury alleged and recovery sought in the First Amended Petition, Plaintiffs' public nuisance claim cannot be separated between opioids distributed under the PPV contract and opioids that were not. *See Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 712-13 (E.D. Tex. 1998) (rejecting remand of suit alleging that decedent developed leukemia while working for 30 years at synthetic rubber factory when federal government controlled plant for only 10 years of the relevant period).

41. When a lawsuit has a non-severable nexus to actions taken by a defendant under federal direction, a disclaimer will not defeat federal officer removal jurisdiction. This is because the court cannot credit a purported disclaimer of federal officer jurisdiction when doing so would require making a premature ruling on an issue of causation relevant to the merits of a plaintiff's case. *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 944-45 (7th Cir. 2020). In *Baker*, the plaintiff alleged injuries from exposure to toxic chemicals produced by the defendants over decades, but disavowed any recovery pertaining to the defendants' manufacture or production of the chemicals for the federal government during the same timeframe. 962 F.3d at 945 & n.3. The Seventh Circuit

held that plaintiffs' disavowal of any claims based on the defendants' actions taken pursuant to federal contracts could not divest the court of federal officer jurisdiction. *Id*. As the Seventh Circuit explained, the plaintiffs' allegations of injury posed "a difficult causation question" involving whether the alleged injuries arose from products manufactured for the government "that a *federal court* should be the one to resolve." *Id*. (emphasis added).

42. That principle applies equally here, where Plaintiffs seek to recover for an alleged public nuisance that encompasses both opioid distributions McKesson made under the direction of a federal officer and opioid distributions it made to private pharmacies. Just as in *Baker*, Plaintiffs' purported disavowal poses "a difficult causation question" as to whether the claimed injury arose from activity that was undertaken pursuant to a federal contract. Consistent with the purpose of the federal officer removal statute, a federal court should decide whether Plaintiffs' claim inherently challenges McKesson's distributions under the PPV Contract, and that question should be resolved based on a complete evidentiary record—not at the removal stage. *Baker*, 962 F.3d at 945 ("[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer."); *Acker*, 527 U.S. at 432 ("To choose between those readings of the Ordinance is to decide the merits of this case . . . Accordingly, we credit the [defendants'] theory of the case for purposes of both [the causal nexus and colorable federal defense] elements of our jurisdictional inquiry").

## IV. ALL PROCEDURAL REQUIREMENTS OF REMOVAL ARE SATISFIED.

43. McKesson was served with the First Amended Petition on July 15, 2022.

44. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of effective service of the Petition on McKesson. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (30-day removal period begins to run upon formal service of complaint).

45. Pursuant to 28 U.S.C. § 1446(a), copies of the state court docket sheet and all documents filed or served upon McKesson in the state court action are attached as **Exhibits 1-4**.

46. In accordance with Local Rule 3.1 and the CM/ECF Civil and Criminal Administrative Procedures Manual and User's Guide, a Civil Cover Sheet is attached as **Exhibit 5**.

47. Written notice of the filing of this Notice of Removal shall be promptly served on all parties herein, and a copy of this Notice shall promptly be filed with the Clerk of the Circuit Court of Greene County, Missouri, pursuant to 28 U.S.C. § 1446(d).

48. Federal officer removal does not require all defendants to consent to or join in the removal and allows removal of the entire action. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants."); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998) (removal under § 1442 "allows a federal officer [or person acting under that officer] independently to remove a case to federal court even though that officer [or person acting under that officer] is only one of several named defendants").

49. In filing this Notice, McKesson reserves all defenses, including those under Federal Rules of Civil Procedure 8(c) and 12(b).

50. WHEREFORE, McKesson gives notice that the above action pending against it in the Circuit Court of Greene County, Missouri, Case No. 2031-CC00459, is hereby removed from the above-referenced State Court to the United States District Court for the Western District of Missouri, Southern Division.

Respectfully submitted,

**LEWIS RICE LLC**

DATED: July 28, 2022

By: */s/ Oliver H. Thomas*
Oliver H. Thomas, #60676MO
Jerina D. Phillips #65103MO
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7711
Facsimile: (314) 612-7711
othomas@lewisrice.com
jphillips@lewisrice.com

*Counsel for Defendant McKesson Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July 2022, a true and correct copy of the foregoing was electronically filed and served on all counsel of record via the Court's CM/ECF system.

*/s/ Oliver H. Thomas*