IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| LESTER E. COX MEDICAL CENTERS d/b/a COX MEDICAL CENTERS, ET AL.<br><br>　　Plaintiffs,<br><br>v.<br><br>AMNEAL PHARMACEUTICALS, LLC, ET AL.<br><br>　　Defendants. | Case No. 6:22-CV-03192-MDH |

## ORDER

Before the Court are the following motions: Manufacturer Defendants' Joint Motion To Dismiss Plaintiffs' First Amended Petition. (Doc. 104).[1] Defendant KVK-Tech joined the Manufacturer Defendants' motion and filed a Motion to Dismiss (Doc. 97). Defendants Actavis Generic Entities filed a joint motion to dismiss and joined the Manufacturer' motion to dismiss (Doc. 102). Defendants Teva Pharmaceuticals USA, Inc. and Cephalon, Inc. (collectively "Teva Defendants") joined in the Manufacturer's Motion and filed an additional motion to dismiss (Doc. 106). KVK-Tech filed a motion to join in the Actavis Generic Entities' Joint Motion to Dismiss. (Doc. 108).

---

[1] The Manufacturer Defendants joining this motion include Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Watson Laboratories, Inc.; Warner Chilcott Company, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma Inc.; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc.; Actavis Laboratories FL, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc., and its predecessor companies, Ortho-McNeil Janssen Pharmaceuticals, Inc. and Janssen Pharmaceutica, Inc.; Noramco, Inc.; AbbVie Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; and KVK-Tech, Inc.

1

Distributor Defendants filed a Joint Motion To Dismiss Plaintiffs' First Amended Petition (Doc. 99).[2] Defendant Anda, Inc. filed a Motion to Dismiss and Joinder in the Distributors' Joint Motion to Dismiss (Doc. 109). Plaintiffs filed an omnibus response in opposition to all pending motions to dismiss. (Doc. 169).

Defendants requested oral argument on all pending motions. (Doc. 121). The parties have filed numerous notices of additional authority and Defendants have a pending Motion for Leave to File Notice of Supplemental Authority. (Doc. 283). Further, Plaintiffs filed a motion to strike Defendants' Notice of Supplemental Authority. (Doc. 238). Manufacturer Defendants filed a motion for leave to file joint response to Plaintiffs' Notice of Filing of Second Supplemental Authority. (Doc. 239).

All motions are ripe for review. The Court has reviewed all of the parties' submissions and for the reasons stated herein, the motions are denied.[3]

## BACKGROUND

Plaintiffs filed their Petition against Defendants in the Circuit Court of Greene County, Missouri, asserting claims of negligence, public nuisance, unjust enrichment, fraud, and civil conspiracy. In August 2020, Defendants moved to dismiss Plaintiffs' Petition for failure to state a claim. The state court denied Defendants' motions in their entirety and issued separate written opinions for the Manufacturers and Distributors.[4]

---

[2] The Distributor Defendants include AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Co.; and McKesson Corporation.
[3] Plaintiffs have filed notices that they have settled their claims and/or dismissed their claims against certain Defendants. To the extent any issues raised in the pending motions to dismiss have already been resolved by the parties any such issues raised in the pending motions to dismiss are denied as moot.
[4] On March 22, 2022, the Distributor and Retailer Defendants petitioned the Missouri Court of Appeals Southern District for a Writ of Prohibition or Mandamus. On March 23, 2022, the Petition was denied. On April 4, 2022, the Manufacturing Defendants and Distributor Defendants answered

2

Case 6:22-cv-03192-MDH    Document 320    Filed 09/28/23    Page 2 of 15

On July 1, 2022, Plaintiffs filed a First Amended Petition ("FAP") adding certain Plaintiffs and one new defendant, McKesson Corporation. On July 28, 2022, McKesson removed the case citing a federal officer defense. Defendants filed the instant motions to dismiss. Plaintiffs argue the current motions raise the same arguments presented in state court that have been previously considered and denied by Judge Cook. Plaintiffs move this Court to apply the law of the case doctrine contending Defendants should not be permitted to "re-argue" issues that were decided and rejected by the state court prior to removal. The Court rejects Plaintiffs' law of the case theory. See *Kraynak v. New Better Bus. Bureau, Inc.*, No. 8:19CV122, 2019 WL 13299933, at *4 (D. Neb. June 4, 2019) (internal citations omitted); and *Joe Hand Promotions, Inc. v. Ridgway*, 2015 WL 1321477, at *2 (W.D. Mo. Mar. 24, 2015) (the law of the case doctrine does not apply to interlocutory orders). The Court considers the arguments presented in Defendants' motions to dismiss as discussed herein.

**Factual Allegations**

Plaintiffs are Missouri hospitals and treatment facilities that are alleging damages for the costs associated with treating opioid use disorder ("OUD") patients. Plaintiffs allege Defendants marketed and promoted opioid medications in a way that was false and misleading creating an opioid epidemic that in turn led to the treatment of OUD patients with increased costs. Plaintiffs state that the Defendants each played a very substantial role in creating the opioid epidemic. Plaintiffs plead, in addition to derelict reporting and lacking policies, Defendants' deceptive and fraudulent acts caused this epidemic and as a result created a nuisance which harmed communities served by the Plaintiffs. Plaintiffs allege they have suffered injuries, including, but not limited to,

---

Plaintiffs' Petition. Thereafter, on April 15, 2022, the Defendants petitioned the Missouri Supreme Court for a Writ of Prohibition or, in the Alternative, Mandamus. On May 17, 2022, the Missouri Supreme Court denied Defendants' petition.

3

emergency rooms and beds being overrun with patients whose medical conditions result from, or are worsened by, a history of prescription opioid use. Plaintiffs contend they have had to add services, divert resources from other areas of care, hire extra security personnel to control their emergency rooms, and meet additional regulatory burdens because of Defendants' conduct. Plaintiffs plead that the added demands of caring for OUD patients has strained the hospitals, resulting in direct and indirect damages which would not have been incurred but for the crisis.

For example, Plaintiffs seek operational losses suffered as a result of treating OUD patients. Plaintiffs do not plead that the injury is exclusive to opioid related diagnoses, like overdose. Rather, Plaintiffs state they intend to introduce evidence that an OUD patient (which is not interchangeable with "overdose patient") often presents with complexity, requiring more hospital resources. and that it costs Plaintiffs more to treat an OUD patient in comparison to treatment of a non-OUD patient with the same exact diagnosis code.[5]

Defendants move to dismiss Plaintiffs' claims arguing Plaintiffs' claims fail because Missouri law precludes Plaintiffs from seeking damages for personal injuries allegedly suffered by patients; Missouri's hospital-lien statute bars Plaintiffs' claims; Plaintiffs' claims fail for lack of causation and Plaintiffs' negligence claim fails for lack of duty and is barred by the economic loss doctrine. Defendants argue Plaintiffs' public-nuisance claim fails because Missouri law bars public-nuisance claims premised on the marketing and distribution of lawful products; Plaintiffs cannot establish an interference with a public right and Plaintiffs have not pled an injury different in kind from the general public. Defendants argue Plaintiffs' fraud claim fails because they cannot

---

[5] Plaintiffs' First Amended Petition is approximately 370 pages long. The Court is clearly generalizing Plaintiffs' allegations and theories for purposes of ruling on the motions to dismiss.

satisfy the element of reliance; and Plaintiffs do not state facts sufficient to support their civil-conspiracy theory.

While the Manufacturer Defendants and Distributor Defendants filed separate motions, as well additional independent motions filed by individual Defendants, the theories and arguments raised by Defendants can be summarily addressed by the Court. Even if the Court has not specifically addressed a detailed argument raised by a Defendant in this Order, the Court has taken into account and considered all of the arguments and issues raised in the briefing. For purposes of brevity and efficiency the Court does not set forth each and every argument raised by the parties in the hundreds of pages of briefing.

## STANDARD OF REVIEW

To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id*.; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the complaint's factual allegations as true, it is not required to accept the plaintiff's legal conclusions. *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The court's assessment of whether the complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The reviewing court must read the complaint as a whole rather than analyzing each allegation in isolation. *Braden*

*v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009); see also *Bergdoll v. Coopersurgical, Inc.*, 2023 WL 22167417 (W.D. Mo. Feb. 22, 2023).

**DISCUSSION**

For purposes of analyzing a motion to dismiss the Court reviews the facts in a light most favorable to Plaintiffs. Plaintiffs allege claims based on the theory that Defendants "played a very substantial role in creating the opioid epidemic." As stated, Plaintiffs allege Defendants, through deceptive and fraudulent acts, caused the epidemic, and in turn Defendants' conduct collectively created a nuisance which harmed communities served by the Plaintiffs, and resulted in a special injury to the Plaintiffs. Across the country numerous lawsuits arising out of the opioid crisis have been filed by a wide range of plaintiffs. Both Plaintiffs and Defendants have cited to a wide range of decisions by both state and federal courts ruling on claims arising out of the opioid crisis. Many of these claims, while based on the same underlying opioid crisis, are different than the legal theories presented here.

For example, Defendants cite to opinions where individual plaintiffs brought claims for increased insurance rates and where individual plaintiffs brought claims for injuries suffered to newborn babies as a result of the opioid crisis. The parties have also cited to cases involving hospital plaintiffs, however, no cases cited by any parties are controlling on this Court. Further, the Court is analyzing Defendants' arguments under a motion to dismiss standard in which Plaintiffs' allegations are viewed in a light most favorable to them.

**Plaintiffs have pled a claim for public nuisance.**

Missouri has adopted the widely accepted definition of "public nuisance" set forth in the Second Restatement: "A public nuisance is an unreasonable interference with a right common to the general public." *State ex rel. Dresser Indus., Inc. v. Ruddy*, 592 S.W.2d 789, 792 (Mo. banc

1980) (quoting Restatement (Second) of Torts, § 821B(1)); see also *City of Lee's Summit v. Browning*, 722 S.W. 2d 114, 115 (Mo. App. 1986) (citation omitted) ("A public nuisance is any unreasonable interference with common community rights such as the public health, safety, peace, morals or convenience.").

Plaintiffs have cited cases where hospitals' public nuisance claims, along with other claims brought in this case, have been allowed to proceed. While not controlling, the Court finds these cases are analogous. See e.g., *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745 (N.D. Ohio 2020); and *State ex rel. Schmitt v. Purdue Pharma,* L.P. No. 1722-CC10626 (22nd Cir. Ct., Mo. Apr. 6, 2020) (Doc. 169-13).

Specifically, in an MDL action filed in the United States District Court Northern District of Idaho the plaintiff was a medical center that brought similar allegations against similar defendants. The Court's opinion addressed the sufficiency of the hospitals' public nuisance claims, as well as other similar claims addressed herein. Judge Polster found that the plaintiffs alleged the defendants "substantially participated in nuisance-causing activities through facilitating the sale of prescription opioids and failing to maintain effective controls to prevent diversion to the general public" and that public health has traditionally been considered a public right. *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d at 774. Further, with regard to special injury, Judge Polster concluded: "[A]t least with respect to increased operational costs and direct purchase of excess opioid pills – West Boca has alleged concrete economic costs, unique to hospital entities, that are different than the alleged interference with human health outcomes suffered by the general

public as a result of the opioid crisis." *Id*.[6] The Court agrees with this analysis and finds Plaintiffs have also pled a claim for public nuisance in this case.

Here, Plaintiffs allege emergency rooms and beds are overrun with patients whose medical conditions result from, or are worsened by, a history of prescription opioid use. Plaintiffs contend they have had to add services, divert resources from other areas of care, hire extra security personnel to control their emergency rooms, and meet additional regulatory burdens based on Defendants' actions and the epidemic caused by it. Plaintiff Hospitals are alleging direct and indirect damages they have incurred as a result of this "crisis." Plaintiffs seek operational losses suffered as a result of treating OUD patients. While this is a very simple generalization of the extensive allegations contained in the Complaint the Court finds Plaintiffs have pled a claim of public nuisance.

Defendants also argue that Plaintiffs cannot bring a cause of action for "unrecouped medical costs incurred as remote consequence of alleged actions of purported third-party tortfeasors;" that Missouri law bars public-nuisance claims premised on the marketing and distribution of lawful products; that Plaintiffs cannot establish an interference with a public right; and that Plaintiffs have not pled an injury different in kind from the general public. However, the Court has considered all of Defendants' arguments and finds Plaintiffs have pled a claim for public nuisance. Whether Plaintiff can ultimately prevail on this claim is yet to be determined.

---

[6] All parties have cited numerous cases in support of their arguments. The Court does not address each and every case the parties have submitted for purposes of brevity and efficiency in its ruling. However, the Court has reviewed the entirety of the record before it even if the Court has not specifically addressed an argument or case in this Order.

**Plaintiffs have pled causation.**

Defendants also move to dismiss Plaintiffs' claims for lack of causation. Defendants' motions argue several reasons Plaintiffs cannot establish causation, including that Plaintiffs do not satisfy Missouri's product-identification doctrine and that Plaintiffs do not state facts supporting a cognizable theory of proximate causation. Manufacturer Defendants cite to *City of St. Louis v. Benjamin Moore & Co*., 226 S.W.3d 110 (Mo. 2007) in support of their motion to dismiss. However, *City of St. Louis* is a summary judgment opinion regarding whether evidence supported Plaintiffs' claims, and not whether Plaintiffs had pled enough to state a claim. In *City of St. Louis,* the Court stated that absent product identification evidence the city could not prove actual causation. *Id.* at 115-16. The Court finds the opinion is distinguishable from the arguments raised in the present motions.

Proximate cause requires that the Plaintiffs' "injury must be a reasonable and probable consequence of the act or omission of the defendant." *Callahan v. Cardinal Glennon Hosp*., 863 S.W.2d 852, 865 (Mo. banc 1993). Here, Plaintiffs have alleged in the Complaint the actions of Defendants that relate to causation of the alleged injuries. The majority of Defendants' arguments are directed at whether Plaintiffs can prove causation through evidence, not whether they have pled a claim. Whether an intervening cause or whether evidence will support causation is not before the Court at this time.

In addition, Distributor Defendants argue they do not manufacture the opioids, they do not market the opioids, and there are no factual allegations to place them in the "causal chain." Here, it is too early to determine whether Plaintiffs can prove causation in support of their claims. However, Plaintiffs have pled a claim, including the element of causation, that can survive a motion to dismiss.

9

Again, the Court finds no reason to analyze or differentiate all of the cases cited by the parties. However, Defendants have cited to several cases that ruled on issues that were raised after evidence was presented, *i.e.* dispositive motions or trials, that are distinguishable. Further, the claims raised in some of the cases are distinguishable from Plaintiffs' theories raised in this case.[7] Plaintiffs have certainly raised some unique legal theories and claims that may be difficult to prove and/or establish through the evidence. Further, it may prove difficult for Plaintiffs to establish certain alleged categories of damages. However, the Court finds Plaintiffs have alleged enough to proceed on their claims. Through discovery, the parties will be able to determine what, if any, evidence supports Plaintiffs' claims and whether Plaintiffs can attribute their alleged damages to Defendants' alleged conduct. Issues such as intervening events and proof of Defendants' involvement and causation will be determined by the evidence produced.

Defendants argue Plaintiffs' claims fail because Missouri law precludes Plaintiffs from seeking damages for personal injuries allegedly suffered by their patients. This equally applies to Defendants' theory that Missouri's hospital-lien statute bars Plaintiffs' claims. Again, Plaintiffs are not seeking to recover a personal injury claim on behalf of patients as described in the Complaint. Rather, Plaintiffs are alleging their own pecuniary losses.

**Plaintiffs have pled a common law fraud claim.**

To state a claim of common law fraud, Plaintiffs must allege: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the

---

[7] The Court find the tobacco litigation cases are different for purposes of this Court's analysis of Plaintiffs' allegations.

representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–132 (Mo. banc 2010).

Plaintiffs allege throughout their Complaint that Defendants have employed deceptive practices and misrepresentations in the marketing and sales of opioids. Plaintiffs have further alleged how the alleged wrongdoing targeted hospitals and prescribers. Plaintiffs have alleged fraudulent conduct by all Defendants and courts have allowed similar claims to proceed. See e.g., *In re Nat'l Prescription Opiate Litig.*, 452 F. Supp. 3d 745 (N.D. Ohio 2020). Here, Plaintiffs' Complaint contains sufficient allegations of a fraud claim against all Defendants to survive a motion to dismiss.

**Plaintiffs have pled a claim for negligence.**

A petition seeking damages for negligence must include allegations, which, if proven, would "show (1) existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of a defendant to perform that duty, and (3) injury to the plaintiff resulting from such failure." *Scheibel v. Hillis*, 531 S.W.2d 285, 288 (Mo. 1976). For negligence *per se* allegations, there are four elements under Missouri law: "(1) the defendant violated a statute or regulation; (2) the injured plaintiff was a member of the class of persons intended to be protected by the statute or regulation; (3) the injury complained of was the kind the statute or regulation was designed to prevent; and (4) the violation of the statute or regulation was the proximate cause of the injury." *Williams v. Bayer Corp.*, 541 S.W.3d 594, 605 (Mo. App. 2017). In order to prevail, Plaintiffs must show that Defendants owed Plaintiffs some duty of care; that by some act or omission the Defendants breached that duty; and that the act or omission caused some injury to the Plaintiffs as a result of that failure.

Defendants raise arguments that Plaintiffs' negligence claims fail for lack of duty, lack of causation, and are barred by the economic loss doctrine. Plaintiffs have pled that Missouri laws and regulations establish public policy regarding Defendants' responsibilities as marketers and distributors of opioids. Plaintiffs have alleged that Defendants have failed to fulfill the requirements of those laws and negligently disseminated "massive quantities" of opioids, failed to report transactions as required, and "facilitated" the crisis. As a result, Plaintiffs claim Defendants failed to meet their responsibilities under the laws and regulations that were implemented to prevent harm. Plaintiffs plead that Defendants, both manufacturers and distributors, directly targeted the hospital Plaintiffs and rendered injuries to them that were foreseeable and breached a standard of care owed. Again, the issue is not whether Plaintiffs can ultimately prevail on this claim but whether they have pled enough to survive a motion to dismiss. The Court finds Plaintiffs have pled enough to proceed.

**Plaintiffs have pled a claim for civil conspiracy.**

To state a claim for civil conspiracy, Plaintiffs must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured." *Higgins v. Ferrari*, 474 S.W.3d 630, 642 (Mo. App. 2015) (internal quotation marks and citations omitted). "[A] conspiracy may be shown by circumstantial evidence. It may be inferred from and proven by evidence showing the collusive and concerted actions of those alleged to be parties to it and the surrounding circumstances." *Stephan v. World Wide Sports, Inc.*, 502 S.W.2d 264, 266 (Mo. 1973).

Plaintiffs again cite to the *MDL* opinions in support of their argument. The Court finds Plaintiffs have alleged that Defendants conspired with each other in arrangements such as trade associations, front groups that promoted opioid use for pain relief, and joint marketing agreements,

to promote the medical culture surrounding opioid use, ward off regulatory and public scrutiny, and thus profit from increased opioid consumption. Plaintiffs claim that Defendants are vicariously liable for the actions of others taken in furtherance of their agreements. The Complaint alleges that the Defendants agreed upon activities and conspired in their actions that promoted opioid use, attempted to sell and distribute as much as possible, create a massive distribution in the marketplace and in turn create an environment where the use and addiction to opioids was the norm. In addition, Plaintiffs plead that Defendants failed to report or control this activity and did so through agreements and to act "in concert." Again, Plaintiffs have pled enough to state a claim of civil conspiracy.

**Plaintiffs have pled a claim for unjust enrichment.**

To establish unjust enrichment Plaintiffs must establish that: '(1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit.'" *Roberts v. Roberts*, 580 S.W.3d 600, 605 (Mo. App. 2019). "The most significant of the elements for a claim of unjust enrichment is the last element, which is the requirement that the enrichment of the defendant be unjust. In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage." *S & J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. App. S.D. 2003) (internal citation omitted).

Here, similar claims have been allowed to proceed and for the reasons stated throughout this Order, Plaintiffs' allegations for unjust enrichment plead enough to proceed against Defendants.

13

Case 6:22-cv-03192-MDH    Document 320    Filed 09/28/23    Page 13 of 15

**Supplemental Authority Motions**

The Court has reviewed numerous cases submitted by both parties in support of their positions on the pending motions to dismiss. For the reasons set forth herein, the Court has denied the motions to dismiss. Defendants' motion for leave to file supplemental authority (Doc. 283) is denied. Defendants move to supplement the record with a case out of the Northern District of California in which a district court dismissed claims brought on behalf of minor children with neonatal abstinence syndrome alleging damage caused by their birth mothers' ingestion of opioids. While the Court reviewed the case, it finds no reason that it needs to be filed in this case at this time and **DENIES** the motion for leave to file. (Doc. 283). The Court also finds no basis to strike supplemental authority and **DENIES** the motion to strike. (Doc. 238). The Court also **DENIES** as moot Defendants' motion for leave to file a response. (Doc. 239).

The Court is aware that other Courts have held that claims similar to Plaintiffs in this case have failed as a matter of law. However, none of the cases submitted are binding on this Court. Further, some cases involve different claims and/or parties. Finally, there are cases that were dismissed at a later stage of litigation. As the Court has stated here, Plaintiffs have pled enough to survive a motion to dismiss. Whether Plaintiffs can ultimately prevail on their claims is yet to be determined.

## CONCLUSION

For the reasons set forth herein, the Manufacturer Defendants' Motions to Dismiss are **DENIED** (Docs. 104, 97, 102, 106, and 108) and the Distributor Defendants' Motions to Dismiss are **DENIED.** (Docs. 99 and 109). Defendants filed a request for Oral Argument on all pending motions. The Court **DENIES** the Defendants' request for oral argument. The Court finds the briefing provided the Court with the information needed to rule on the pending motions. (Doc.

121). Finally, the Court **DENIES** the motions for leave to file and/or strike supplemental authority. (Docs. 238, 239 and 283).

**IT IS SO ORDERED.**

Date: September 28, 2023

                                               */s/ Douglas Harpool*
                                               Hon. Douglas Harpool
                                               United States District Judge